**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Johanna M. C. M.[1],<br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Civil No. 25-1480 (GLS) |

## OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of her application for Social Security Disability Insurance ("SSDI") benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 6. The Commissioner opposed and Plaintiff replied. Docket Nos. 8, 11. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 15. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED**.

### I. Procedural Background

Plaintiff worked as an assistant to the dean of admissions at Ana G. Méndez University until 2017. Tr. 59, 61 175, 393.[2] On August 19, 2018, Plaintiff filed an application for SSDI benefits claiming that, as of October 14, 2017, the following conditions limited her ability to work: multiple sclerosis, thyroid, chronic spasms and body pain and severe depression. Tr. 54, 188, 392. Plaintiff received treatment from several doctors as evidenced by her disability report. The application was denied initially and upon reconsideration. Tr. 179-199. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on April 26, 2023, a hearing was held

[1] Plaintiff's last name is omitted for privacy reasons.

[2] "Tr." refers to the transcript of the record of proceedings.

via telephone before ALJ Juan Milanés. Tr. 49-73. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Michael Frank testified at the hearing. Id. On May 19, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of October 14, 2017, through the date of the decision. Tr. 43. Plaintiff asked the Appeals Council to review but the request was denied on September 5, 2025, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-8. On September 9, 2025, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 6, 8, 11.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment," which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P,

App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment," the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment," the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B. Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the

Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). Rather, the Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán, 819 F.2d 1, 3 (1st Cir. 1987).

## III. Discussion

### A. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 14, 2017, the alleged onset of disability. Tr. 32. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): multiple sclerosis, obesity, and major depressive disorder. Id. The ALJ further found that Plaintiff had an impairment that was not severe because it presents no limitation, or more than mild limitation in Plaintiff's ability to perform basic work activities. Tr. 33. The ALJ classified Plaintiff's hypothyroidism as a non-severe impairment. Tr. 32-33. The non-severe impairments were accounted for along with Plaintiff's severe impairments in determining her RFC. Id.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 33. The ALJ concluded that the "Paragraph B" criteria were not met because the Plaintiff's mental impairment did not meet the listing level of severity. Tr. 34. The ALJ proceeded to determine Plaintiff's RFC. Tr. 34. The ALJ stated that, in formulating the RFC, he had to consider all impairments, including those that were non-severe (Tr. 32), and that his findings at step two regarding Plaintiff's mental functioning were considered. The ALJ concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. 404.1567(b), except:

> She has the option to alternate between sitting and standing once per hour for 5 to 10 minutes without being off task; can occasionally climb ropes, ladders, scaffolds, ramps and stairs; can occasionally stoop, balance, kneel, crouch and crawl. She can frequently handle and finger with left hand; and can occasionally push and or pull with the lower left extremity. She must avoid concentrated exposure to extreme heat, hazardous machinery and unprotected heights. She can perform simple and multi-step tasks, but in a low to moderate stress work environment, which is defined as involving no managerial, executive, supervisory or financial management

> responsibilities. She can occasionally perform jobs that require a strictly enforced production pace, such as conveyor belt jobs with specific hourly quotas. She can frequently interact with coworkers and supervisors, but occasionally with the public.

Tr. 34. The ALJ then concluded that Plaintiff could perform past relevant work as a document preparer, addresser and surveillance system monitor. Tr. 42. The ALJ found that Plaintiff was not disabled. Tr. 43.

**B. Plaintiff's Allegations of Error**

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the ALJ failed to evaluate substantial evidence that establishes the deterioration of Plaintiff's severe condition of Multiple Sclerosis, and (2) substantial evidence does not support the ALJ's finding that Plaintiff's subjective complaints were not entirely consistent with the evidence. The Court finds no error.

**1. The ALJ's Evaluation of the Medical Evidence**

Plaintiff argues that the ALJ erred by failing to properly evaluate substantial evidence demonstrating the progressive deterioration of her Multiple Sclerosis. According to Plaintiff, the medical evidence establishes a progressive worsening of her condition, whereas the ALJ improperly focused on treatment notes documenting only temporary or partial improvement with medication. Specifically, Plaintiff claims the ALJ ignored a treatment note by Dr. Rodríguez Archilla dated June 5, 2017, multiple brain MRIs, a bone scan, and two treatment notes by Dr. Chinea Martínez dated January and March 2022. See Docket No. 6 at pp. 13-16. The record does not support that contention. The ALJ considered the longitudinal medical record, including Plaintiff's treatment history, clinical examination findings, diagnostic studies, and evidence both supporting and undermining the alleged severity of her symptoms. The ALJ was not required to discuss every piece of evidence or explain why he did not credit each finding in the manner Plaintiff advocates. See Tassel v. Astrue, 882 F. Supp. 2d 143, 148 (D. Me. 2012) ("an administrative law judge is not required to address specifically every piece of medical evidence that accords with or is inconsistent with his or her conclusions"). Nor does a claimant establish reversible error merely by identifying evidence that could support a different conclusion. See Malaney v. Berryhill, 2017 WL 2537226, at *2 (D. Me. June 11, 2017), report and recommendation adopted, 2017 WL 2963371 (D. Me. July 11, 2017), aff'd, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting

a different conclusion does not, in itself, warrant remand.") (citation omitted). Weighing conflicting evidence and resolving the ultimate question of disability are matters for the ALJ to decide, not the reviewing court. Rodríguez v. Secretary, 647 F.2d at 222 (citations omitted).

Plaintiff challenges the ALJ's reliance on a May 8, 2017, treatment note from Dr. Rodríguez Archilla documenting improvement in pain, back discomfort, myalgias, and numbness with medication. See Docket No. 6 at p. 11; Tr. 36, 478. Plaintiff points to a June 5, 2017, note documenting pain at 8/10 and contends that it showed no response to Celebrex and Zanaflex. But the latter recorded "some response" to those medications. Tr. 476. The ALJ also considered other records reflecting improvement with treatment, including treatment notes from Dr. Rivera Allende and Dr. Chinea Martínez. Tr. 36. Specifically, the ALJ pointed to April 2019 treatment notes from Dr. Rivera Allende documenting a decrease in Plaintiff's upper-back discomfort with medication and describing her as improving and meeting treatment expectations. Tr. 36, 550, 552. The ALJ also cites a June 2020 treatment note from Dr. Chinea Martínez that documented improvement in myalgia and numbness with medication. Tr. 36, 638. Most importantly, the ALJ also cites the treatment notes from Dr. Chinea Martínez, dated January 1, 2022, and March 3, 2022, specifically the findings that Plaintiff alleges he ignored: continuous fatigue, left leg and arm numbness, and mild atrophy of the bilateral hippocampus. Tr. 35, 762-763, 769-770. While the ALJ acknowledged these findings, he concluded that these findings also revealed full range of motion overall, normal gait, and negative Babinski. Tr. 35-36. The ALJ therefore did not selectively rely on isolated reports of improvement while disregarding contrary findings.

Nor did the ALJ disregard Plaintiff's diagnostic imaging as Plaintiff claims. He expressly considered and summarized the relevant MRI findings and bone scan, including the March 2017 brain MRI showing no significant change in the white-matter lesions associated with multiple sclerosis; the 2018 three-phase bone scan showing moderate to severe degenerative inflammatory arthritic changes in multiple joint groups; the March 2019 MRI showing a moderate lesion burden and multiple new T2 hyperintense lesions suggestive of recent demyelination, together with mild-to-moderate atrophy; the June 2020 MRI showing multifocal and confluent white-matter lesions compatible with multiple sclerosis but a moderate overall T2 lesion burden; and the April 2021 MRI showing a moderate T2 hyperintense lesion burden and mild central brain and corpus callosal atrophy, without definite black holes or enhancing lesions. Tr. 36-37. The ALJ thus considered the objective evidence that Plaintiff contends demonstrates progression.

The ALJ's evaluation was also supported by the opinions of the state-agency medical consultants, who reviewed the medical evidence and concluded that Plaintiff retained the capacity for a range of sedentary work. Tr. 165-168, 171-173, 189-196. Specifically, the state-agency physician at the reconsideration level reviewed the record in April 2020, including Dr. Rodríguez Archilla's treatment notes. Tr. 185, 189. The ALJ also relied on Dr. Camuña's consultative examination, which noted normal findings and found that, despite limping with the left leg, Plaintiff could "walk, sit, and stand" without the need of an assistive device and "could carry and handle common objects with both hands." Tr. 38-39, 529. These opinions provide substantial medical support for the ALJ's determination because these are consistent with the longitudinal record and are not contradicted by any medical opinion assessing greater functional limitations based on Plaintiff's clinical findings. See Ramos v. Barnhart, 119 F. App'x 295, 296 (1st Cir. 2005) ("assessments and the reports of the consultative examining physicians provide substantial evidence to support the ALJ's determination"); Crow v. Colvin, No. 13-225-PAS, 2014 WL 3966362, at *13 (D.R.I. Aug. 13, 2014) (finding no error in the ALJ's reliance on the uncontradicted opinions of state agency medical sources). Indeed, the ALJ gave Plaintiff "the benefit of the doubt" and assessed an RFC more restrictive than that endorsed by the state-agency physicians. Tr. 41.

In sum, the ALJ did not disregard Plaintiff's evidence nor did he rely exclusively on temporary improvement with medication. He considered the longitudinal record, including examination findings, diagnostic imaging, treatment records documenting ongoing symptoms, and evidence of improvement and otherwise normal findings. Plaintiff's disagreement with the ALJ's weighing of that evidence does not demonstrate that the ALJ failed to apply the proper legal standard or that his findings lack substantial evidentiary support. Plaintiff's argument therefore amounts, at bottom, to a request that the Court reweigh the evidence and reach a different conclusion regarding the severity and functional impact of her Multiple Sclerosis impairment. That is not the role of the reviewing court.

**2. Substantial Evidence**

Plaintiff argues that the ALJ improperly discredited her subjective allegations of pain, claiming that the ALJ "did not conduct a specific evaluation of how pain affects a claimant with a history of multiple sclerosis that has progressively worsened over time[.]" Docket No. 6 at p. 17.

Under the SSR 16-3p, the ALJ must evaluate the intensity, persistence, and limiting effects of subjective symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *7. Because symptoms may be more severe than that can be shown by objective medical evidence alone, the regulations require consideration of six factors, commonly referred to as the "Avery factors:" (1) the nature, location, onset, duration, frequency, radiation, and intensity of the pain; (2) factors that precipitate or aggravate the pain, including movement, activity, or environmental conditions; (3) the type, dosage, effectiveness, and side effects of pain medication; (4) treatments other than medication to alleviate pain; (5) functional restrictions; and (6) the claimant's daily activities. Id. § 404.1529(c)(3); Avery v. Secretary of Health & Human Services, 797 F.2d 19, 28 (1st Cir. 1986). "While a claimant's performance of household chores or the like ought not to be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding." Berríos López v. Secretary of Health & Human Services, 951 F.2d 427, 429 (1st Cir. 1991). And an ALJ may discount subjective complaints when these are inconsistent with objective medical evidence and other evidence in the record. Romero Hernández v. Comm'r of Soc. Sec., 2020 WL 5036172, at *7 (D.P.R. Aug. 26, 2020). Moreover, "[a]n ALJ's credibility determination is entitled to deference, especially when supported by specific findings." Frustalgia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987).

The ALJ satisfied these requirements. His decision reflects a longitudinal assessment of Plaintiff's symptoms and limitations, including both evidence supporting her allegations and evidence inconsistent with the degree of limitation alleged. The ALJ reviewed treatment records from 2017 through 2023, documenting Plaintiff's complaints of neck and upper, mid, and lower back pain, fatigue, left-sided numbness and weakness, morning weakness, and increased weakness with high temperatures. Tr. 35. He also acknowledged physical examinations that revealed lumbar paravertebral tenderness and muscle spasm, cervical and lumbar myofascial pain, lumbar disc disease, diminished deep tendon reflexes, a positive Romberg test, 4/5 manual muscle strength, arthralgias, and mild bilateral hippocampal atrophy. Id. Thus, the ALJ did not disregard the medical evidence corroborating Plaintiff's symptoms. The ALJ nevertheless reasonably found that the longitudinal examination findings did not establish limitations to the extent alleged. To this end, the record contained repeated normal or relatively benign findings, including normal and symmetric muscle mass, no muscular atrophy or deformity, normal peripheral sensation, no

tingling, negative straight-leg-raise testing, generally full range of motion, normal gait, a negative Babinski sign, and no headaches, dizziness, musculoskeletal effusions, or instability. Tr. 35-36. The ALJ could consider these findings in determining whether the severity of Plaintiff's alleged functional limitations was consistent with the record.

The ALJ did not rely on isolated instances of improvement. He considered Plaintiff's treatment history, including prescriptions for Tizanidine and Celebrex, which were associated with improvement in her pain and numbness, as well as physical therapy, which improved her back pain and myalgia. Tr. 36. The ALJ also considered the factors aggravating Plaintiff's symptoms, including movement, fatigue, and exposure to high temperatures. Tr. 35. His analysis therefore addressed not merely whether Plaintiff experienced pain, but the extent to which her symptoms remained functionally limiting despite treatment.

The ALJ further considered the medical opinions addressing Plaintiff's functional capacity. Dr. Camuñas' consultative examination attributed Plaintiff's symptoms to relapsing-remitting multiple sclerosis with residual left-sided weakness but found that she could walk, sit, and stand without an assistive device and could carry and handle common objects with both hands. Tr. 38-39. The ALJ found this opinion persuasive because it was consistent with longitudinal medical evidence. Tr. 39. He likewise considered the State agency physicians' assessments, including Dr. González's opinion that Plaintiff retained the capacity for less than the full range of sedentary work, with occasional postural limitations and frequent handling and fingering limitations. Importantly, the ALJ did not blindly adopt those assessments. Id. He found that the evidence developed at the hearing warranted greater exertional restrictions and additional environmental limitations. Tr. 39. Thus, the RFC reflects an independent evaluation of the entire evidentiary record.

The ALJ also considered Plaintiff's activities of daily living, including her ability to drive and care for her mother and grandmother. While those activities alone would not establish an ability to sustain full-time employment, the ALJ properly considered them as one component of his overall assessment of the intensity and limiting effects of Plaintiff's symptoms. See Berríos López, 951 F.2d at 429.

Most importantly, the ALJ did not entirely reject Plaintiff's subjective complaints. He expressly recognized that Plaintiff's physical and mental impairments and associated symptoms were supported to some degree by objective, diagnostic, and clinical evidence. He nevertheless

determined that the record did not substantiate limitations beyond those incorporated into the RFC and explained that he gave Plaintiff's subjective complaints "a degree of importance" and "the benefit of the doubt" in formulating that RFC. Tr. 41. This demonstrates that the ALJ credited Plaintiff's allegations of pain to the extent supported by the record while declining to accept a degree of functional limitation that was inconsistent with the longitudinal evidence.

In sum, the ALJ did what SSR 16-3p and the applicable regulations require: he considered Plaintiff's subjective allegations in conjunction with the objective medical evidence, treatment history, medical opinions, and activities of daily living. The ALJ did not base his decision on isolated notations of improvement, nor did he ignore evidence of persistent symptoms. Rather, he reconciled the conflicting evidence and incorporated into the RFC those limitations he found supported by the record, ultimately adopting more restrictions than those assessed by the State agency physicians. As explained in the prior subsection, the Court's role is not to reweigh the evidence. See Rodríguez Pagán, 819 F.2d at 3. Because the ALJ's evaluation is supported by specific findings and substantial evidence, Plaintiff has not demonstrated reversible error in the ALJ's assessment of her subjective symptoms.

## IV. Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of September 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge